UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                   )
CONTINENTAL CASUALTY               )
COMPANY, *et al.*,                 )
                                   )    Case No. C06-0921RSL
                    Plaintiffs,    )
     v.                            )
                                   )    ORDER GRANTING PLAINTIFFS' MOTION
CORUS PHARMA, INC.., *et al.*,     )    FOR SUMMARY JUDGMENT
                                   )
                    Defendants.    )
_____)

        This matter comes before the Court on "Plaintiffs Continental Casualty Company and Transcontinental Insurance Company's Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56" (Dkt. # 33) and "Defendants' Motion for Summary Judgment" (Dkt. # 40). The parties seek a declaration regarding the insurers' obligation to defend defendants in a suit brought in King County Superior Court by Chiron Corporation, a competitor of defendant Corus Pharma. In the underlying state court action, Chiron alleged that defendants misappropriated (a) proprietary information related to "the development and testing of inhalable antibiotic compounds" and (b) Chiron's opportunity to obtain a patent on, and market, the inhalable antibiotic. Decl. of Anthony B. Leuin (filed 10/9/07), Ex. 1 at ¶¶ 1-2 (hereinafter "Chiron Complaint").

        Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of a

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

claim "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324.  In the context of this insurance coverage dispute, the relevant facts are undisputed and the parties agree that summary judgment is appropriate.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and heard oral argument on April 10, 2008, the Court finds as follows:

Although Continental and/or Transcontinental provided comprehensive general liability ("CGL") and umbrella coverage to Corus for successive annual policy periods between February 2001 and February 2007, the only issue in this case is whether Continental had a duty to defend under the 2001-2003 version of the CGL policy.[1]  To resolve that issue, the Court compares the allegations of the Chiron complaint with the policy provisions.  If the complaint alleges facts which could, if proven, impose liability upon the insured that falls within the policy's coverage, the duty to defend Corus and its executives in the underlying action is triggered. E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wn.2d 901, 908 (1986); McMahan & Baker, Inc. v. Continental Casualty Company (CNA), 68 Wn. App. 573, 580 (1993).  The complaint must be liberally construed and the insurer will be required to defend if

---

[1] At oral argument, defendants suggested for the first time that Chiron's complaint may have triggered the duty to defend under two of the umbrella polices issued by plaintiffs.  Despite the fact that plaintiffs' motion for summary judgment clearly sought a declaration regarding their defense obligations under all of the policies at issue, defendants did not rely on the umbrella policies in their opposition and cannot do so for the first time at oral argument.

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT           -2-

the claim is potentially within the policy's coverage. <u>Bosley v. American Motorists Ins. Co.</u>, 66 Wn. App. 698, 701 (1992).

Defendants argue that Chiron's complaint alleges "personal and advertising injuries" covered by Continental's policy. "Personal and advertising injury" is defined in the policy to include injuries arising out of (1) the misappropriation of advertising ideas, (2) the misappropriation of style of doing business, and (3) infringement of copyright, title or slogan. Decl. of Anthony B. Leuin (filed 10/9/07), Ex 2 at CP0094. As defendants point out, the policy does not require that the "advertising injury" be committed in the course of advertising Corus' goods, products or services: the offense merely had to arise "out of [Corus'] business." Decl. of Anthony B. Leuin (filed 10/9/07), Ex 2 at CP0067. The Court need not, therefore, concern itself with whether Corus was involved in an advertising activity or whether there was a causal connection between such activity and Chiron's alleged injuries. <u>See, e.g.</u>, <u>Sentex Sys., Inc. v. Hartford Accident & Indem. Co.</u>, 93 F.3d 578, 580 (9th Cir. 1996). Nevertheless, Chiron's complaint, liberally construed, must seek to hold defendants liable for one of the three identified "advertising injuries" in order to give rise to the potential for coverage. <u>See</u> <u>Novell, Inc. v. Fed. Ins. Co.</u>, 141 F.3d 983, 986 (10th Cir. 1998) (court first considers whether the underlying complaint alleged a predicate offense before examining whether there was a causal connection between the alleged injuries and the insured's advertising activities).

Defendants argue that Chiron's claims are based not only on the misappropriation of technical data and know-how regarding inhalable antibiotics, but also on the theft of trade secrets related to funding sources, potential investors, clinicians, test study sites, and marketing knowledge/techniques specific to the cystic fibrosis community. Defendants' Motion (Dkt. # 40) at 8. Unfortunately for defendants, this characterization of Chiron's complaint rests solely on the declaration of Bruce Montgomery, not on the allegations of the complaint itself. In the complaint, Chiron narrowly defines the "proprietary information" that was allegedly stolen as

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT                -3-

relating to "the development and testing of inhalable antibiotic compounds." Chiron's Complaint at ¶ 2.[2] None of Chiron's claims is based on the misappropriation of funding sources, customer lists, or marketing techniques. To the extent the complaint contains any allegations regarding defendants' efforts to commercialize an inhalable antibiotic, they are offered to support Chiron's claim that defendants misappropriated development and testing data and do not state a separate wrong for which defendants could be independently liable. For example, Chiron alleges that in December 2000, less than two months after leaving Chiron's employ, defendant Montgomery filed and pursued a provisional patent application directed to an inhalable formulation of aztreonam, relying in part on a three-month clinical study. Chiron's Complaint at ¶¶ 44-45. The point of this allegation is that the development and testing information on which the patent application relied had to have been generated while Montgomery was employed by Chiron, thereby supporting Chiron's claim of misappropriation. Similarly, allegations regarding defendants' exploitation of their inhalable antibiotic (see Chiron's Complaint at ¶¶ 52-58) show the damage caused by defendants' misappropriation of the development and testing information and support Chiron's claim of equitable ownership over the '249 patent: there is no allegation that defendants stole proprietary marketing or customer information.

Defendants' attempts to incorporate the testimony of Bruce Montgomery and the terms of the Employment Agreement into the underlying complaint are unavailing. The general

---

[2] This narrow use of the term "proprietary information" is repeated throughout the complaint. Read as a whole, the complaint makes clear that Chiron is asserting an ownership interest in technical data and information regarding the new inhalable antibiotic and that defendants' theft of that information is the basis for their liability. See Chiron's Complaint at ¶ 26 ("Since it began developing PA-1806 in the 1990's, PathoGenesis [Chiron's predecessor] has engaged in extensive research and testing of PA-1806 and aztreonam and has developed significant data, know-how and technical information relating to the compounds. Among other things, PathoGenesis invested significant time and resources in amassing information about and testing PA-1806 and aztreonam.") and ¶ 42 ("Upon information and belief, the Individual Defendants unlawfully used proprietary information relating to PathoGenesis' development of PA-1806 and testing of aztreonam and disclosed such proprietary information to third parties.").

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT                   -4-

rule is that the duty to defend is determined from the face of the underlying complaint. See, e.g., Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wn.2d 757, 760-61 (2002). Although there are exceptions to this general rule,[3] they do not require or justify the consideration of the Montgomery declaration in this case. Upon receipt of Chiron's complaint and defendants' notice of claim, Continental repeatedly asked for any information that would support defendants' contention that a covered claim had been alleged, including any statements by Chiron that indicated that its claims were broader than they appeared on the face of the complaint. Defendants provided no information, in part because they were busy preparing for trial and in part because they believed themselves bound by a protective order that prohibited them from sharing information with their insurer. Continental therefore denied coverage based solely on the information available to it at the time, namely the allegations of Chiron's complaint. Through the Declaration of Bruce Montgomery, defendants now seek to summarize the course of the underlying litigation and explain what Chiron's complaint really means. The best evidence of Chiron's claims, however, is its complaint and/or subsequent documents filed in the underlying litigation. Defendants have not overcome plaintiffs' objections to the declaration of Mr. Montgomery or otherwise shown that his declaration regarding the content of Chiron's complaint is admissible under Fed. R. Ev. 1004 or the hearsay rules. Defendant Montgomery's testimony regarding his understanding of Chiron's claims (paragraphs 12-20 and 24-25 of the declaration) has not, therefore, been considered.[4]

---

[3] If the complaint is ambiguous or if there are conflicting facts readily available to the insurer, the insurer may consider evidence outside the complaint for the purpose of triggering coverage. E-Z Loader, 106 Wn.2d at 908.

[4] In addition, it would be unfair to allow defendants to withhold from plaintiffs relevant information regarding the nature of Chiron's claims at the time the coverage decision was made and then, once coverage litigation was initiated, to rely on that information to argue that Chiron's claims were broader than they appeared.

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT                -5-

Defendants also rely on the terms of the Employment Agreement attached to Chiron's complaint to argue that Chiron has asserted claims based on the misappropriation of advertising-related materials.  While it is true that the Employment Agreement defines "Proprietary Information" to include marketing materials and customer lists, the complaint itself uses the phrase without capitals and provides its own, more narrow, definition.  The Employment Agreement is attached to the complaint to identify the source of the contractual obligation breached by the individual defendants:  its defined terms are not incorporated into the complaint and should not be used to alter or expand the allegations contained therein.

For all of the foregoing reasons, the Court finds that Chiron alleged various causes of action arising from defendants' unlawful taking of information, data, and know-how belonging to Chiron's predecessor in connection with the testing and development of an inhalable antibiotic.  The next issue, then, is whether the wrong asserted is potentially covered by Continental's policy.  Under the law of Washington:

> [I]nsurance policies are construed as contracts.  An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.  If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists.  If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity.  Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured.  A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665-66 (2000) (internal quotations and citations omitted).

The only coverage at issue in this case is the "personal and advertising injury" coverage.  If Chiron's complaint alleges (1) the misappropriation of advertising ideas, (2) the misappropriation of style of doing business, or (3) infringement of copyright, title or slogan, the

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT          -6-

duty to defend would be triggered. All three of these provisions have been interpreted by the courts, and none of them is alleged in the underlying complaint. In Washington, the "misappropriation of advertising ideas" can be accomplished in a number of ways, but it always involves the taking of "an idea for soliciting business or an idea about advertising." Auto Sox USA, Inc. v. Zurich N. Am., 121 Wn. App. 422, 427 (2004). See also Amazon.com Int'l, Inc. v. Am. Dynasty Surplus Lines Ins. Co., 120 Wn. App. 610, 616 (2004). Through the underlying complaint, Chiron sought to impose liability on defendants for the unlawful taking and exploitation of research data, not marketing or advertising ideas. Nor did Chiron allege that defendants had stolen its "style of doing business." That phrase has "routinely been characterized as referring to a company's comprehensive manner of operating its business." Green Machine Corp. v. Zurich-Am. Ins. Group, 313 F.3d 837, 840 (3rd Cir. 2002) (internal quotation marks omitted).[5] Defendants allegedly stole confidential information regarding the development and testing of a new product: at its broadest, the complaint can be read to assert a claim that defendants deprived Chiron of a patent to which it was entitled. Chiron does not equate this one product with its business or otherwise attempt to hold defendants liable for misappropriating the manner in which Chiron carries out its business or trade.

As to the third predicate offense asserted by defendants, they argue that Chiron's alleged loss of the opportunity to patent an inhalable antibiotic is really a claim for "infringement of copyright, title or slogan." Defendants' theory is that, because a patent is property, the alleged loss of the '249 patent is an infringement of legal title. Washington law does not support this claim, however. The courts have held that the words "copyright," "title," and "slogan," as used

---

[5] Defendants prefer a more cumbersome interpretation of "misappropriation of style of doing business," namely the unfair taking for one's own use the manner in which another performs or carries out its regular occupation or trade. Opposition at 11. Even if the Court were to adopt this formulation, it is substantially similar to the interpretation used by the Third Circuit and would not affect the outcome of this case.

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT                    -7-

in a "personal and advertising injury" policy, are unambiguous, well-defined, legal categories related to literary and artistic works. Auto Sox, 121 Wn. App. at 429. "Title," in this context, refers to a name, not the ownership of real property. Courts have specifically found that the phrase "infringement of copyright, title, or slogan" does not include claims of patent infringement because such a claim is legally distinct and does not fall naturally into the policy language. Id.

In apparent recognition of the fact that the case law is against them, defendants argue that none of the above-cited cases is persuasive, much less precedential, because the policy at issue here does not require that the misappropriation or infringement arise out of Corus' advertising activities. Given this purported lack of case law, defendants maintain that the insurers should have given their insureds the benefit of the doubt and provided a defense. Defendants rely on dicta in Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 60 (2007), that could be interpreted broadly enough to trigger the duty to defend whenever new policy language is at issue or the specific facts surrounding a claim have not yet been litigated. The Court doubts that the Supreme Court intended to revolutionize Washington insurance law, however, and instead views Woo as an application of well-settled principles with a warning against relying on the advice of counsel in close cases. Other courts which have considered duty of defend cases since Woo seem to agree: other than substituting the word "conceivably" for its synonym "potentially," the analysis remains unchanged.[6] The key point, as stated by the majority in Woo, is that an insurer may not rely on an equivocal interpretation of case law to deny coverage: where there is a doubt about whether the allegations of the complaint could, if proven, give rise to a covered liability, the insured is entitled to a defense.

Whether the Supreme Court intended Woo to work a sea change or not, the Court

---

[6] See Goodstein v. Continental Cas. Co., 509 F.3d 1042 (9th Cir. 2007); Trinity Universal Ins. Co. v. Animal Pharm., Inc., 2008 WL 958202 (E.D. Wash. April 8, 2008); Weyerhaeuser Co. v. Fireman's Fund Ins. Co., 2008 WL 53121 (W.D. Wash. January 2, 2008); Allstate Ins. Co. v. Namini, 2007 WL 4246181 (W.D. Wash. November 28, 2008).

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT            -8-

finds that plaintiffs were entitled to rely on the unequivocal cases interpreting "misappropriation of advertising idea," "misappropriation of style of doing business," and "infringement of copyright, title or slogan." Regardless of whether the policy requires conduct arising out of the insured's advertising activities or simply out of its general business operations, the first issue under the "personal and advertising injury" coverage is whether an advertising injury has been alleged. The three types of advertising injury set forth in Continental's policy are the same ones that have been interpreted by courts all over the nation: this authority is not equivocal and it leads to the conclusion that there was no advertising injury in this case. The policy distinctions defendants seek to draw are legally insignificant, and the "undetermined rule of law" doctrine set forth in <u>Woo</u> does not come into play.

Chiron's complaint does not allege any cause of action which, if proven, could give rise to a liability covered by Continental's insurance policy. Having determined that the complaint did not trigger Continental's duty to defend, the Court need not determine whether the exclusion for claims "arising out of a breach of contract" applies or whether Continental was prejudiced by the insured's late notice of the claim.

Plaintiffs' motion for summary judgment is GRANTED and defendants' motion for summary judgment is DENIED.

Dated this 21st day of April, 2008.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT                -9-